## COMPENSATION WHERE DEATH IS CAUSED BY HEAT STROKE.

Common Pleas Court of Hamilton County.

KATE WHITE v. WALLACE YAPLE ET AL.

Decided, January Term, 1921.

*Workmen's Compensation—Heat Stroke an Injury for Which Compensation May be Claimed—Use of Intoxicating Liquor by the Decedent—Separation from his Family at Intervals Does Not Deprive Them of the Right to Compensation.*

1. The fact that one killed during the course of his employment was addicted to the use of intoxicating liquor and such use may have contributed to his death from heat stroke, will not be permitted to militate against the claim of his dependent widow and children, where it appears that the stroke was suffered in the course of his employment and while at work in the hot sun of a July day.

2. Neither does the fact that the decedent had not lived continuously with his family bar recovery by his dependent widow and three small children of the gross amount payable under the statute.

DARBY, J.

This is an appeal from the order of the Industrial Commission of Ohio, disallowing the plaintiff's claim for compensation, by reason of the death of her husband, John White, while in the

employ of a contributor to the state insurance fund.

In the petition it is alleged that White was in the employ of F. M. Quill, a general contractor, as a laborer working in a ditch in Cincinnati, and that while so working he suddenly collapsed and suffered a heat stroke, which caused his death the following day, July 18, 1916; that said stroke occurred in the course of his employment, and that he left his widow, the plaintiff, and three minor children aged seven, ten and twelve years, who were de pendent upon him for support.

The answer admits the application, and its disallowance; that the deceased was in the employ of Quill, who was a contractor, and contributor to said insurance fund.

On the trial it was agreed that the children were as named in the petition; that the average weekly wage of the deceased at or about the time of his death, was $11.00.

The plaintiff claims that the death resulted directly from heat stroke suffered in the course of employment of the deceased; that the deceased was at the time living with his wife and minor children, who were entirely dependent upon him, and that plaintiff is entitled to an award of two-thirds of the average weekly wage, for the full period of six years from and after his death.

It is claimed on behalf of the defendants, that the evidence does not show an injury received in the course of employment which is compensable under the laws of the state; that the death of deceased was not caused by heat prostration, or if it was, that it was brought about directly by the use of intoxicating liquors so as not to be compensable, and that the deceased was not living with his family at the time, but was in fact separated from it.

The testimony tends to show that on July 17, 1916, the deceased went to work about seven o'clock in the morning, digging first in a manhole, and afterwards in the street, for his employer; that he continued at this work until about four o'clock in the afternoon, when he collapsed and fell to the street: a physician was called who administered temporary relief, and ordered his immediate removal to the General Hospital; said physician stated that he suspected when he saw the patient that it was a case of heat stroke. The deceased lived until the following day

at 10:30 p. m., when he died.  The death certificate filed with the board of health of this city, gives the cause of death in these words: "Heat stroke.  Oedema of Brain.  Heat intoxication.  Contributory: Heat Intoxication."  The hospital records contain similar statements.

Dr. DeCourcy, who called on the patient of the afternoon of the day he was injured, examined him and gave it as his opinion that death was due to heat stroke and concussion of the brain.

The testimony further shows that the deceased was a man some 6 feet in height, weighing about 180 pounds; was a powerful, muscular man, and had not been under medical treatment for a number of years; that he was addicted to the use of intoxicants more or less, to what extent is uncertain.

One witness, Lena Grim, testified that he was on a spree three days during the week immediately before his death.  He was actually away from his employment during three or four days in that week; his wife testified that he was home with her on account of her illness; and a statement signed by the witness, Mrs. Grim, was presented in evidence tending to contradict her statement that he was intoxicated during the week before his death.  The language of the statement was—

"that she had never seen him under the influence of liquor during the week previous in which he was overcome by heat, and had no liquor in or around my house."

The deceased in the week before his prostration complained of the heat, and the evidence shows that the temperature on the day before, and the day of his prostration and the day after, was respectively, 93 degrees, 91 degrees, 93 degrees.   The testimony in the case was that excessive use of intoxicants might reduce the resistance of the body to the effects of excessive heat.   Many cases have been discussed in argument touching upon the question as to whether or not heat prostration is an injury received in the course of employment.  This court has heretofore decided that it is.

In the case of *Hart* v. *Duffy et al*, comprising the Ohio Industrial Commission, the deceased was employed in a factory doing

hard, continuous, monotonous labor, during a very hot month, and in the middle of one afternoon, took sick and on the same night died as a result of heat prostration. Some months before this he had undergone an operation for appendicitis.

Since the Haft decision was rendered, the decision of the Court of Appeals of Franklin county, in *Industrial Commission of Ohio* v. *Brant,* was called to the attention of the court; that decision fully sustains the position that sun stroke, or heat stroke, is an injury within the workmen's compensation law. The policy of this beneficent law is best set forth in Section 1465-91, which provides:

"Such board shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided; but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this act."

In *Industrial Commission* v. *Pora,* 100 O. S., 218, it is said:

"The real spirit of this act is to measurably banish technically and to do away with the nicety of distinction so often observable in the law, *and commands a liberal construction in favor of employees.*"

In *Musselli* v. *Industrial Commission,* 28 O.C.A., 97, it was held:

"The fact that one killed in the course of his employment had contracted a bigamous marriage does not bar his legal wife living in Italy from receiving benefits under the Ohio workmen's compensation act, where there is no evidence that she had been other than a faithful wife."

In an opinion by the Attorney General dated May 23, 1916, 14 O. L. R., 382, is the following:

"Claims arising under the Ohio workmen's compensation law where the proof is controlled by Section 44 of the Act, Section 1465-91, General Code, should be clear *but any doubt of a claimant to participate in said fund should be weighed carefully in favor of the claimant.*"

Speculation as to what effect his intoxication may have had upon the death of the deceased is idle. As the court understands the record there is no question but that heat stroke, or heat prostration brought about the death of this man: though it might have been induced or contributed to by other conditions found in the body; but the fact that he was addicted to the use of intoxicating liquor, and that that condition might have contributed to his death, should not militate against the claims of the dependent widow and minor children, where the stroke was suffered while he was actually at work in the hot sun in the course of his daily employment.

The courts of this state wherever the matter has come up, have adopted liberal views in favor of the dependents of an employee, or of the injured party himself; as where one suffered frozen feet, another while in the course of his employment was struck in the eye by hail, or where one carelessly threw a pencil which injured a fellow employee in the eye, these cases were held to be in the course of employment.

There was considerable evidence as to whether the wife and children were living with White at, or recently prior to the time of his death; it was claimed that the plaintiff made contradictory statements concerning this matter of his residence. It seems that his wife was a frail woman; his work was at Madisonville, some eight or ten miles from where his wife lived in Cincinnati; that he was required to be at his place of work at seven o'clock in the morning, and that he boarded at the home of Mrs. Grim in Madisonville. The wife, her daughter, and other persons testified that he made his home with the family, was there every week, sometimes for several days, but that as a matter of convenience he boarded during the week at Madisonville. •

There is no testimony to dispute that offered on behalf of plaintiff that she and her three minor children were actually dependent upon her husband for support, and that he gave all or part of his wages at home every week.

The court does not look upon the question as to whether the family were actually living together, or not as of great importance. See 142 N. W. (Wis.), 271. Having found that the

death resulted from injury received in the course of his employment, and there being a widow and three children of the ages stated, the plaintiff should receive for herself, and the benefit of said minors, the gross amount allowable under the statute, to continue from the date of the death until six years after the date of the injury, to be computed at the rate of two-thirds of said weekly wage, per week, during said period.

A judgment may be entered for the plaintiff accordingly.

*Bolsinger, Kuhn & Bolsinger,* and *Chester E. Shook,* for plaintiff.

*Louis H. Capelle,* Prosecuting Attorney and *Charles W. Baker,* Assistant Prosecuting Attorney, for defendant.